UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Sandra Schadt,

    Plaintiff,

    v.                                             Civil Action No. 2:11-CV-159

Social Security Administration,
Commissioner,

    Defendant.

## OPINION AND ORDER
(Docs. 7, 13)

Plaintiff Sandra Schadt brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Schadt's motion to reverse the Commissioner's decision (Doc. 7), and the Commissioner's motion to affirm the same (Doc. 13). For the reasons stated below, the Court GRANTS Schadt's motion, in part; DENIES the Commissioner's motion; and REMANDS for further proceedings and a new decision.

## Background

Schadt was thirty years old on her alleged disability onset date of October 15, 1990. She has a college degree, and has worked as a retail sales clerk, a waitress, a group home supervisor, and a park maintenance worker and forewoman. Her date last insured is December 31, 1995, and thus her alleged disability period is from October 1990 through the end of 1995. Schadt's last significant work occurred in 1990;

and in 1991, she and her husband had a son. During that period, her typical day involved playing with and caring for her son, doing household chores, and spending time with her husband. (AR 23-25.)

Schadt reports that, in 1979, she experienced her first serious allergic reaction. (AR 20, 458, 469.) After having unpacked new clothes at a clothing store, she broke out in hives; her throat swelled up; she became nauseas; and she ultimately went into anaphylactic shock, resulting in hospitalization. (*Id.*) From then on, she has experienced symptoms ranging from mild-to-severe, in reaction to chemicals contained in substances found in the environment, including but not limited to leather, new clothes, new cars, new carpet, new pavement, pine wood, perfume, fabric softener, deodorant, pesticides, and gasoline. (AR 31.) These symptoms include headache, runny nose, sore throat, back pain, joint pain, swelling, respiratory infection, abdominal pain, and anaphylactic shock. (AR 27-29.) Given her environmental sensitivities, Schadt has made modifications to her home environment, including installing a special air filter, removing all carpeting, and disposing of all mainstream products containing strong chemicals or scents, including soap, shampoo, laundry detergent, and cleaning sprays. (AR 36, 327.) She has also minimized her exposure to environments that she is unable to control. (AR 33-34.) In an effort to accommodate Schadt's environmental sensitivities, Schadt's now-grown son has had to take such precautions as refraining from wearing new shoes around Schadt, washing his new clothes multiple times before wearing them around Schadt, and removing his clothes and showering when returning home after having been exposed to outside environments. (AR 327-28.)

In July 2009, Schadt filed an application for disability insurance benefits. Therein, she alleged that she had been unable to work since October 15, 1990, due to multiple chemical sensitivity ("MCS")[1], fatigue, chronic pain, and "problems focusing and functioning." (AR 271.) She explained that she could not go out in public except to the grocery store, could not be around people, and had a "very weak" immune system. (AR 272.) On December 15, 2010, Administrative Law Judge ("ALJ") Thomas Merrill conducted a hearing on the disability application. (AR 14-73.) Schadt appeared and testified, and was represented by counsel. Schadt's sister, medical advisor Dr. Bruce Biller, and vocational expert Howard Steinberg also appeared and testified at the hearing.

On February 4, 2011, the ALJ issued a decision finding that Schadt was not disabled under the Social Security Act from her alleged disability onset date through her date last insured. (AR 9-13.) A few months later, the Decision Review Board notified Schadt that it was affirming the ALJ's decision, thus making it the final decision of the Commissioner. (AR 1-4.) Having exhausted her administrative remedies, Schadt filed the Complaint in this action on June 20, 2011. (Doc. 1.)

## **ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so

---

[1] The National Institute of Environmental Health Sciences has listed six "criteria" of MCS, and has defined the condition as a "chronic, recurring disease caused by a person's inability to tolerate an environmental chemical or class of foreign chemicals." (AR 902.)

3

engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), meaning "the most [the claimant] can still do despite [his or her mental and physical] limitations," based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

ALJ Merrill denied Schadt's claim at step two of the sequential analysis, finding that Schadt did not have a "medically determinable impairment" during the relevant period. (AR 12.) Relying on Dr. Biller's testimony, the ALJ stated:

> [Schadt] has not substantiated the existence of any medically determinable impairment through the use of medically acceptable clinical and laboratory diagnostic techniques. As the medical examiner Dr. Biller testified, [Schadt] has not shown the existence of any objective evidence documenting the existence of a medically determinable impairment. Dr. Biller noted that it is a difficult condition to diagnose as no single test exists that can prove [its] existence . . . .

(*Id.*) The ALJ concluded that Schadt was not under a disability from her alleged onset date of October 15, 1990 through December 31, 1995, her date last insured. (AR 13.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct

5

legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should consider that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Schadt argues that the ALJ erred in finding that she did not have a medically determinable impairment, and failed to properly develop the record. Additionally, Schadt seeks appointment of a different ALJ and medical advisor on remand. In response, the Commissioner asserts that the ALJ properly concluded that Schadt failed to establish the presence of a medically determinable impairment; and that, if the matter is remanded, the Commissioner should retain the discretion to select an ALJ and, if necessary, a medical advisor. For the foregoing reasons, the Court finds in favor of Schadt with respect to the ALJ's step-two analysis and development of the record, but does not find that a new ALJ or medical advisor is required on remand.

I.  **The ALJ Erred in Finding that Schadt Did Not Have a Medically Determinable Impairment**.

As noted above, the ALJ determined that Schadt's MCS was not a medically determinable impairment, and thus Schadt was not disabled.  In so finding, the ALJ relied on the opinion of medical advisor Dr. Biller that Schadt "ha[d] not shown the existence of any objective evidence documenting the existence of a medically determinable impairment."  (AR 12.)  Neither Dr. Biller nor the ALJ questioned the veracity of Schadt's complaints of her symptoms.  In fact, Dr. Biller stated at the administrative hearing that he "ha[d] confidence that [Schadt] [wa]s telling the truth when she describe[d] her symptoms" (AR 49), and that he "[was] not saying that the symptoms [Schadt] [wa]s relaying [were] not happening" (AR 56).  Similarly, the ALJ stated in his decision that "[t]reatment notes from before and after [the relevant period] . . . document complaints of symptoms that remain[ed] consistent throughout her treatment history" (AR 12), and that "[Schadt] has consistently complained of symptoms over a number of years" (AR 13).  The ALJ then discounted these complaints of symptoms, stating: "The regulations . . . state that regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable . . . impairment *cannot be established in the absence of objective medical abnormalities, including medical signs and laboratory findings*."  (AR 12 (emphasis added).)  Like fibromyalgia and chronic fatigue syndrome, however, MCS is diagnosed based largely on a claimant's subjective complaints and cannot be diagnosed based on testing and objective medical evidence.  *Robbins v. Astrue*, No. 09-cv-343-JD, 2010 WL

7

3168306, at *4 (D. N.H. Aug. 9, 2010) (citing *Johnson v. Astrue*, 597 F.3d 409, 411-12 (1st Cir. 2009) (claimant's fibromyalgia diagnosed based on combination of subjective complaints of symptoms and bilateral "trigger points" or tender spots); *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) (claimant diagnosed with chronic fatigue syndrome based on history of symptoms, which was consistent with definition of condition in Commissioner's policy manual)); *see Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (remanding where ALJ "effectively required 'objective' evidence for [fibromyalgia,] a disease that eludes such measurement"; and noting that, "[a]s a general matter, 'objective' findings are not required in order to find that an applicant is disabled") (citing *Donato v. Sec'y of Dep't of Health and Human Servs.*, 721 F.2d 414, 418-19 (2d Cir. 1983) ("Subjective *pain* may serve as the basis for establishing disability, even if . . . unaccompanied by positive clinical findings of other 'objective' medical evidence") (emphasis in original) (citation omitted); *Cruz v. Sullivan*, 912 F.2d 8, 12 (2d Cir. 1990); *Eiden v. Sec'y of Health, Educ., and Welfare*, 616 F.2d 63, 65 (2d Cir. 1980); *Cutler v. Weinberger*, 516 F.2d 1282, 1286-87 (2d Cir. 1975); *Cline v. Sullivan*, 939 F.2d 560, 566 (8th Cir. 1991)).

      The ALJ particularly noted in his decision the position of the American Medical Association ("AMA") regarding MCS, stating that the six criteria for MCS, as defined by the National Institute of Environmental Health Sciences, were "based upon a consensus letter by doctors who believe the conditions exists, *not based upon recognition by the AMA*." (AR 13 (emphasis added).) But regardless of the AMA's position on whether MCS is a legitimate medical condition, and although courts have generally held that

8

testimony about the diagnosis of MCS is inadmissible under the well-established *Frye* and *Daubert* tests because the diagnosis is not generally accepted in the relevant medical community,[2] *see Kuxhausen v. Tillman Partners, L.P.*, 197 P.3d 859, 940-41 (Kan. App. 2008) (listing cases); the Social Security Administration ("SSA") has adopted the position that MCS may be a basis for disability, depending on the particular facts of each case.  *See Creamer v. Callahan*, 981 F. Supp. 703, 704-05 (D. Mass. 1997) (noting that MCS is recognized in the Commissioner's policies and that the Commissioner "specifically agreed 'to stipulate that [the SSA] recognizes [MCS] as a medically determinable impairment'").  The SSA's Program Operations Manual System ("POMS"), an internal policy and procedure manual used by employees of the Department of Health & Human Services to evaluate Social Security claims, addresses MCS under the topic "Environmental Illness," and states as follows:

> "Clinical ecology" or "environmental medicine" (as it is now called) is an approach to medicine that ascribes a wide range of symptoms to exposure to numerous common substances in the environment.[3]  Recent publications by clinical ecologists have suggested that chemicals cause toxic damage to the immune system.  However, there is no indication that individuals with a clinical ecology diagnosis of chemical sensitivity have immune deficiency, immune complex disease, autoimmunity, or abnormal functioning of their immune systems.
>
> . . . .
>
> In claims alleging disability due to environmental illness, it is often difficult to identify abnormal signs and laboratory findings which can be associated with the alleged symptoms.  Therefore, *in evaluating claims based on*

---

[2]  *See Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

[3]  Although different terminology is used, this policy statement clearly refers to MCS.  (*See* AR 335.)

>  *environmental illness, all of the claimant's symptoms, signs, and laboratory findings must be considered to determine if there is a medically determinable impairment and the impact of any impairment on the claimant's ability to work.*  This evaluation should be made on an individual case-by-case basis to determine if the impairment prevents substantial gainful activity.

POMS DI 24515.064 (emphasis added).  Although the POMS does not have the force and effect of law, it is nevertheless persuasive authority and thus is entitled to be given weight.  *See St. Mary's Hosp. v. Blue Cross & Blue Shield*, 788 F.2d 888, 890 (2d Cir. 1986); *Davis v. Sec'y of Health and Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989); *Frerks v. Shalala*, 848 F. Supp. 340, 350 (E.D.N.Y 1994).

It appears that the ALJ ended his evaluation of Schadt's MCS based on Dr. Biller's opinion, despite acknowledging, as quoted above, that "[t]reatment notes from before and after [the relevant period] . . . document complaints of symptoms that remain consistent throughout [Schadt's] treatment history." (AR 12.)  The ALJ did not discuss or weigh the other medical opinions, including those of treating physicians Dr. Alex Bingham (AR 902-04) (opining that, due to her MCS, Schadt was able to work only a maximum of sixteen hours per week from 1990 to 1999); Dr. Thomas LaCava (AR 441-44) (opining that Schadt's MCS was chronic, permanent, and unremitting, resulting in her being unable to work); and Dr. Linda Haltinner (AR 450) (opining that Schadt's MCS was extreme and interfered with activities of normal living).[4]  The Second Circuit has long held that ALJs are required to explain the weight given to the opinions of treating

---

[4] The ALJ also neglected to discuss or weigh the medical opinions of treating nurse April Brumsom, who opined that Schadt could not find a workplace that she could tolerate (AR 419-23), and treating chiropractor Dr. Michael Shaffer, who reported that Schadt "was extremely sensitive to what are considered harmless chemicals in our everyday world" (AR 448).

10

physicians, and that failure to provide "good reasons" for not crediting these opinions is a ground for remand. *See* 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("Commissioner's failure to provide 'good reasons' for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error" and was grounds for remand). In *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999), the Second Circuit applied this rule to treating physician opinions which, like those of Schadt's treating physicians in this case, were made outside the alleged disability period, given that those opinions were more favorable to the claimant than those relied on in the ALJ's decision. *See also Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). Here, three treating physicians – Drs. Bingham, LaCava, and Haltinner – offered opinions favorable to Schadt regarding the existence and severity of her MCS. (*See* AR 441-44, 450, 902-04.) And one of these opinions (Dr. Bingham's) cited to laboratory and diagnostic testing in support thereof. (AR 903.) Yet the ALJ discussed none of these opinions in his decision, instead relying exclusively on the testimony of medical advisor Dr. Biller, who had no treatment history with Schadt and who admitted that he was not a specialist in the field of MCS. (AR 50, 56.)

The Court finds that the ALJ erred in determining at step two that Schadt was not disabled because she did not have a medically determinable impairment. The ALJ should have considered and weighed the relevant medical opinions before making this determination, instead of relying exclusively on the testimony of medical advisor Dr. Biller. *See* SSR 06-03p, 2006 WL 2329939, *2-3 (2006) (setting forth "factors" ALJ

11

considers in weighing medical opinions, including length of treatment relationship, consistency with record as a whole, and whether the source is a specialist); 20 C.F.R. § 404.1527(c)(2). Clearly, there is a debate within the medical community about whether MCS constitutes a legitimate, diagnosable medical illness, and what research criteria a physician should use to make the diagnosis, *see, e.g., Buxton v. Halter*, 246 F.3d 762, 769 (6th Cir. 2001); *Parisi v. UnumProvident Corp.*, No. 3:03CV01425(DJS), 2007 WL 4554198, at *12 n.6 (D. Conn. Dec. 21, 2007); but the lack of consensus among medical professionals, in and of itself, may not be the sole or principal reason for the ALJ's denial of Schadt's claim, *see Creamer*, 981 F. Supp. at 704-05 (remanding for a reassessment of claimant's MCS at step two and beyond) (citing *Weiler v. Shalala*, 922 F. Supp. 689 (D. Mass. 1996) (remanding when ALJ denied claim at step two after relying on consulting physician's view that claimant's fibromyalgia was not a debilitating disease)).

For these reasons, the matter must be remanded for a new analysis at step two, and beyond if necessary.[5]

## II.  On Remand, the ALJ Should Further Develop the Record.

The ALJ also erred in failing to adequately develop the record. Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ has an affirmative

---

[5] As pointed out in Schadt's Reply, although the Commissioner's motion focuses largely on the remoteness of Schadt's date last insured, this was not the focus of either the ALJ's decision or Dr. Biller's testimony. In any event, the ALJ's error in determining whether Schadt's MCS was a medically determinable impairment, including his failure to adequately consider the medical opinions, must be corrected on remand before the issue of the remoteness of Schadt's alleged disability period may be addressed. On remand, if the ALJ determines that Schadt's MCS is a disabling impairment and that the onset of this impairment occurred prior to the date of the first recorded medical report, he must "infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." SSR 83-20, 1983 WL 31249, at *2 (1983).

obligation to develop the administrative record.  *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)).  The regulations "are not agnostic as to the source of the evidence needed to assemble an appropriate record; instead, they direct the [ALJ] to seek the information [he] requires from the claimant's 'own medical sources,' and resort to consultative examinations only after 'every reasonable effort' to obtain evidence from the claimant's sources has failed."  *Harris v. Astrue*, No. 08-CV-3374 (JG), 2009 WL 8500986, at *4 (E.D.N.Y. Jan. 20, 2009) (citing 20 C.F.R. § 404.1512(d)(2)).  Even when the ALJ determines that a consult is required, the claimant's "treating source" is the "preferred source" of the consultation.  *Id.* (citing 20 C.F.R. § 404.1519h).

      Here, as noted above, the ALJ relied on medical advisor Dr. Biller's testimony to find that Schadt was not disabled.  But Dr. Biller himself referenced gaps in the record, stating at the December 15, 2010 administrative hearing that there were records missing – including consultations with an allergist and a psychiatrist – which prevented him from assuredly opining as to whether Schadt had a medically determinable impairment.  (AR 50.)  Dr. Biller recommended that "a truly concerted effort" be made "to get the prior records that bear on th[e] issue [of Schadt's MCS diagnosis]."  (AR 67.)  Approximately one week after the hearing, on December 22, 2010, Schadt submitted to the ALJ a statement from treating physician Dr. LaCava which agreed with Dr. Biller's recommendation to further develop the record, and stated: "Schadt . . . should undergo skin testing and a neuropsychological assessment in order to confirm whether she has a medically determinable impairment for chemical sensitivity."  (AR 910; *see* AR 356.)

Dr. LaCava further advised that his office was "in the process of scheduling these tests" and would likely receive the results by the end of March 2010. (AR 910.) The ALJ, however, issued his decision on February 4, 2011, without inquiring about or receiving the test results. (AR 13.)

Notwithstanding the ALJ's issuance of his decision, the skin tests were apparently administered to Schadt in February and March 2011, producing positive responses which arguably support Dr. LaCava's opinion that Schadt had been significantly limited due to her chemical sensitivities. (*See* Doc. 7-2.) On remand, the ALJ should consider these test results, as well as Dr. LaCava's opinion interpreting them, given their obvious relevance to the issue of whether Schadt's MCS was a medically determinable impairment and how the condition impacted her ability to work.

### III. The Commissioner Is Not Required to Assign the Claim to a Different ALJ.

Finally, Schadt asks that the Court order assignment of her claim to a new ALJ and medical advisor. The decision to reassign a case to a new ALJ on remand is generally reserved for the Commissioner. *Dellacamera v. Astrue*, No. 3:09 CV 1175(JBA), 2009 WL 3766062, at *1 (D. Conn. Nov. 5, 2009) (citing *Travis v. Sullivan*, 985 F.2d 919, 924 (7th Cir. 1993)). Nonetheless, in certain circumstances, courts – including the Second Circuit – have issued remand orders directing the assignment of a new ALJ. *See, e.g., Miles v. Chater*, 84 F.3d 1397, 1400, 1401 (11th Cir. 1996) (remanding to a new ALJ because original ALJ's statement that claimant's doctor "consistently finds disability in cases of clients represented by [claimant's] attorney" reflected that "the process was compromised"); *Ventura v. Shalala*, 55 F.3d 900, 905 (3d

14

Cir. 1995) (remanding to a new ALJ because original ALJ's conduct at administrative hearing – including coercive, intimidating, and totally irrelevant questioning of the claimant – was "offensive and unprofessional"); *Kolodnay v. Schweiker*, 680 F.2d 878, 880-81 (2d Cir. 1982) (remanding to a new ALJ because original ALJ failed to adequately consider medical evidence); *Ocasio v. Barnhart*, No. 00 CV 6277(SJ), 2002 WL 485691, at *10 (E.D.N.Y. Mar. 28, 2002) (remanding to a new ALJ due to animosity between the ALJ and the claimant's attorney and the ALJ's lack of sensitivity to the claimant's impairments). When determining whether it is appropriate to remand a case to a new ALJ, courts in this circuit follow the four-factored analysis set forth in *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004). *Johnson v. Astrue*, No. 3:10-CV-1023 (VLB), 2011 WL 2938074, at *2 (D. Conn. Feb. 15, 2011). These factors are:

> (1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) *a clearly manifested bias or inappropriate hostility toward any party*; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; [and] (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party.

*Sutherland*, 322 F. Supp. 2d at 292 (emphasis added).

Schadt contends that a new ALJ is required in this case because there was an "appearance" that ALJ Merrill "compromised the fairness of the process in this claim." (Doc. 7 at 22.) Specifically, Schadt claims that the ALJ's failure to properly develop the record, failure to pose questions to the vocational expert, and failure to properly analyze the medical opinions, "lead to the appearance of [ALJ] indifference" and "undermine the fairness of the hearing." (*Id.* at 22, 23.) The Court finds that, although some errors were

15

made, including a failure to acknowledge relevant evidence, there is no evidence of bias, hostility, or prejudice. Rather, the administrative transcript demonstrates that the ALJ was courteous and civil to Schadt and her attorney at the hearing. Nor is it clear that the ALJ would not apply the appropriate legal standards, as discussed herein, on remand. Therefore, the Court declines to order reassignment to a different ALJ on remand, although the Commissioner retains full discretion to make such an assignment if he so chooses. *See Johnson*, 2011 WL 2938074, at *2 (taking no position on which ALJ should be assigned to the case on remand, and noting that (a) there was "no evidence that the ALJ acted due to apparent hostility toward Ms. Johnson"; and (b) "simply failing to adhere to the appropriate legal standard during the first hearing does not clearly indicate that the ALJ would not apply the correct standard on remand"); *Card v. Astrue*, 752 F. Supp. 2d 190, 192-93 (D. Conn. 2010) (finding that plaintiff's admission that ALJ was "uniformly courteous and civil" toward her at the administrative hearing was fatal to her argument).

Similarly, the Commissioner retains the discretion to secure the services of a medical advisor other than Dr. Biller on remand. But the Court does not preclude the retention of Dr. Biller again, given Schadt's failure to either (a) demonstrate Dr. Biller's bias or prejudice in this matter, or (b) cite to legal authority limiting the Commissioner's discretion with respect to securing a particular medical advisor on remand.

**Conclusion**

For these reasons, the Court GRANTS Schadt's motion (Doc. 7), in part; DENIES the Commissioner's motion (Doc. 13); and REMANDS for further proceedings and a new decision in accordance with this ruling.  The Court DENIES Schadt's request for an order appointing a new ALJ and medical advisor on remand, but notes that the Commissioner is free to appoint a different ALJ and medical advisor, if he deems such appointment(s) appropriate.

Dated at Burlington, in the District of Vermont, this 25th day of May, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge